```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION

DANIEL PALACIOS,                 §
                                 §
     Plaintiff,                  §
                                 §
v.                               §         CIVIL ACTION NO. H-11-3085
                                 §
CONTINENTAL AIRLINES, INC.,      §
                                 §
     Defendant.                  §
```

MEMORANDUM AND ORDER

Pending in this employment discrimination suit is Continental Airlines, Inc.'s Motion for Summary Judgment (Document No. 17). After carefully considering the motion, response, reply, and applicable law, the Court concludes for the reasons that follow that the motion should be granted.

I. Background

Plaintiff Daniel Palacios ("Plaintiff"), who was terminated as a sales agent for Defendant Continental Airlines, Inc. ("Defendant"), initially alleged discrimination under the Americans with Disability Act ("ADA") and discrimination and retaliation under the Family and Medical Leave Act ("FMLA").[1]  Plaintiff testified that he suffers from depression, which began in 2005 when his mother was diagnosed with cancer.[2]  His condition worsened when

---

[1] Document No. 1, ex. D (Orig. Pet.).

[2] Document No. 19, ex. 1 at 47 (Palacios depo.).

his mother died and his wife and child left him in 2006 and continued to deteriorate in 2009 when he filed for bankruptcy.[3] Plaintiff received medical treatment from several doctors and took medication for depression over this period of time.[4] Plaintiff took FMLA leave from June 24, 2009 through August 17, 2009, as recommended by Dr. Leonardo Espitia, to address his depression and insomnia.[5]

On November 3, 2009, Plaintiff was called into a meeting with Assistant Director of Customer Service Malcolm Gearing, Human Resource Manager Karen Rodarmel, Manager of Technical Investigations Elizabeth Condon, Technical Investigator Richard Stepanski, and Employee Involvement Team Representative Irene Mosqueda, where he was questioned about alleged violations of Defendant's policies on conflicts of interest and benefits.[6] Plaintiff was asked about changing a ticket for his son's girlfriend without collecting the required fee, changing tickets for two other friends without collecting the required fee, and for allowing eighteen of his buddy passes to be used for international travel in which Plaintiff did not accompany the user of the pass.[7]

---

[3] Id., ex. 1 at 48-50, 58-59.

[4] Id., ex. 1 at 8-10, 51-57.

[5] Document No. 19, ex. 1 at 62-63; ex. 10.

[6] Document No. 17, ex. 13.

[7] Id.

Defendant regarded all of these activities to violate its policies, including its Friends and Family Policy. Approximately seven weeks later and after concluding its investigation, Defendant terminated Plaintiff's employment because of Plaintiff's violations of company policy.[8] Plaintiff appealed the decision through the three-step appeal process set out in company policy, and the decision to terminate Plaintiff's employment was upheld at every level.[9]

Defendant argues that Plaintiff has not made a prima facie case for discrimination under the ADA or retaliation under the FMLA, and further that it has articulated a legitimate, nondiscriminatory reason for firing Plaintiff. In response to the motion for summary judgment, Plaintiff offers no evidence and advances no argument to raise so much as a genuine issue of material fact on his FMLA retaliation claim, which will therefore be dismissed. Plaintiff's remaining claim is that he was discriminated against when Defendant failed to accommodate his disability of depression during the meeting with Defendant's representatives on November 3, 2009.[10] Specifically, Plaintiff

---

[8] Document No. 17, ex. 14.

[9] Document No. 17, exs. 16-19, 23, 28-29.

[10] Document No. 19 at 15-16. In his response to Defendant's motion, Plaintiff argues that he has a disability discrimination claim and a failure to accommodate claim. These are the same claim, however. Failure to accommodate is a type of discrimination, see 42 U.S.C. § 12112(b)(5)(A), and is the only discrimination Plaintiff argues occurred in this case.

3

argues that his disability affects his memory, and that at the meeting he requested (1) a pen and paper to take notes, (2) more time to answer questions, and (3) access to Passenger Name Records regarding his alleged violations of policy.[11]  Defendant's representatives granted Plaintiff's request for a pen and paper, but Plaintiff asserts that his other two requests were not granted.

## II.  Discussion

A.  Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.  "A party asserting that a fact cannot be or is

---

[11] Document No. 19 at 18, ex. 1 at 164-65.

genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

B.  <u>The Americans with Disabilities Act</u>

    1.  <u>Failure to Accommodate</u>

The ADA prohibits discrimination against employees on the basis of a disability. 42 U.S.C. § 12101 *et seq*. To "discriminate against a qualified individual on the basis of disability," as prohibited in the statute, includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112. "An employee who needs an accommodation because of a disability has the responsibility of informing her employer." <u>E.E.O.C. v. Chevron Phillips Chem. Co.</u>, 570 F.3d 606, 621 (5th Cir. 2009). "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." <u>E.E.O.C. v. Agro Distrib., LLC</u>, 555 F.3d 462, 471 (5th Cir. 2009). "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." <u>Id.</u> "When an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." <u>Griffin v. United Parcel Serv., Inc.</u>, 661 F.3d 216, 224 (5th Cir.

6

2011) (quoting Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736 (5th Cir. 1999)).

    2. ADA Framework

A plaintiff may establish a claim under the ADA by producing either direct or indirect evidence of discrimination. Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir. 1995). If a plaintiff relies on indirect evidence, the claim is analyzed using the burden shifting framework set out in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Daigle, 70 F.3d at 396. Under this framework, a plaintiff must make a prima facie case of discrimination by showing that: (1) he suffers from a disability; (2) he was qualified for the job; (3) he was subjected to an adverse employment action; and (4) he was replaced by a non-disabled person or was treated less favorably than non-disabled employees. Id. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action, producing some evidence in support thereof. Id. The defendant's burden is satisfied if it "produces any evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." Id. (citation and quotation marks omitted). "If the defendant meets its burden, the presumption of discrimination created by the prima facie case

disappears, and the plaintiff is left with the ultimate burden of proving discrimination." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). "[T]he plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." Id.

C.  Analysis

    1.  Plaintiff's Prima Facie Case

Defendant does not challenge Plaintiff's qualification for his job as sales agent, a job Plaintiff had performed for a number of years.  Furthermore, it is undisputed that Plaintiff was terminated from his position as a sales agent, which was an adverse employment action.  Inasmuch as Plaintiff has no direct evidence that he was discharged because of his depression, Plaintiff relies on the McDonnell Douglas burden shifting framework to raise a prima facie case.  Defendant argues, however, that Plaintiff has not made a prima facie case because he has not presented evidence (1) to show he was disabled and (2) to show he was replaced by a non-disabled person or was treated less favorably than non-disabled employees.

The term "disability" is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment (as

described in paragraph (3))." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. § 10102(2)(B).

The alleged discrimination occurred after the effective date of the ADA Amendments Act of 2008 ("ADAAA"), and hence the amended ADA applies. Pub. L. No. 110-325, 122 Stat. 3553 (2008); *see also* Garner v. Chevron Phillips Chem. Co., L.P., 834 F. Supp. 2d 528, 538 (S.D. Tex. 2011) (Harmon, J.). The ADAAA, among other things, broadened the standard for qualifying as disabled. *See* Pub. L. No. 110-325, 122 Stat. 3553 § 2 (2008). The regulations issued under the ADAAA state: "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. 1630.2(j).

Plaintiff testified that his depression affected his ability to sleep and eat over a period of several years, that sometimes he slept too much, one time for almost two days, and at other times he

could not sleep, that sometimes he didn't eat, and that sometimes he just sat in his living room and did not do anything, "just . . . blank."[12] Plaintiff testified that prior to taking his FMLA leave, he chose to allow others to work many of his hours, which company policy allowed, and that due to his depression he did not really care about potentially losing his house or making car payments or paying other accounts.[13] Plaintiff testified that it took a lot of effort to get out of bed and take care of himself.[14] Plaintiff did not testify that his disability adversely affected his job performance as a sales agent, and Defendant makes no claim that it did. Nonetheless, the self-described severity of Plaintiff's depression and its adverse effects on his desire to work, his sleeping, his eating, and his attention to ordinary care of himself, supported by some medical evidence Plaintiff presents, would appear sufficient under the more lenient standard of the ADAAA at least to raise a fact issue that Plaintiff had a disability under the ADA. *See* 29 C.F.R. § 1630.2(j) ("The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity.

---

[12] Document No. 19, ex. 1 at 65.

[13] Id., ex. 1 at 61-65.

[14] Id., ex. 1 at 65.

Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis."); Naber v. Dover Healthcare Assocs., Inc., 765 F. Supp. 2d 622, 643-47 (D. Del. 2011) (finding plaintiff's depression, which limited her ability to sleep, eat, and concentrate constituted a disability under the amended ADA); Estate of Murray v. UHS of Fairmount, Inc., Civ. A. No. 10-2561, 2011 WL 5449364, at *6-8 (E.D. Pa. Nov. 10, 2011) (applying the amended ADA and declining to grant summary judgment based on a lack of disability when some facts are alleged regarding plaintiff's depression and anxiety and summary judgment is appropriate on other grounds); Karr v. Napolitano, No. C 11-02207 LB, 2012 WL 4462919, at *9 (N.D. Cal. Sept. 25, 2012) (finding plaintiff's sleep apnea was sufficient to constitute a disability under more lenient standard enacted by the ADAAA even though it did not affect his ability to do his job).

As for the remaining element required to make a prima facie case under the burden shifting framework, Plaintiff offers no proof that he was replaced by a person without a disability, or even that he was replaced by *anyone*. Likewise, Plaintiff presents no evidence that he was treated less favorably than any non-disabled employee, and does not compare himself to *any* other employee, and therefore fails to satisfy this required element to raise a prima facie case of ADA discrimination.

2.  <u>Legitimate, Nondiscriminatory Reason</u>

Assuming, however, that Plaintiff were able to make a prima facie case, Defendant additionally presents summary judgment evidence that it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, namely Plaintiff's violation of Defendant's corporate policies. Defendant stated the results of its investigation and specified Plaintiff's violations of company policies that were the basis for Plaintiff's termination in its December 21, 2009 termination letter to Plaintiff: changing a ticket for his son's girlfriend without collecting a fee, modifying other tickets without collecting applicable change fees or other associated charges, and eighteen instances of unaccompanied international buddy pass use.[15] The investigation included the interview with Plaintiff on November 3, 2009, when Defendant's representatives confronted Plaintiff with their initial findings and gave him an opportunity to respond. Plaintiff at that time admitted some violations, denied others, and stated he could not remember the details on others, such as the identities of several of the individuals who had used Plaintiff's buddy passes. The letter summarized:

> We have concluded from this investigation your actions resulted in a conflict of interest and violated the Friends and Family Policy. Additionally, your actions

---

[15] Document No. 17, ex 14.

have violated the company's pass travel policies.  As stated in the Working Together Guidelines Continental expects employees:

- to protect Company property as well as the property of fellow employees, customers and others against theft or damage;

- to be truthful in all communications;

- to avoid conflicts of interest or the appearance of such a conflict;

- to use good judgment and open communication in all decisions.

You have not met these expectations.  Based upon the results of our investigation, we have decided to terminate your employment with Continental, effective today.[16]

Defendant's evidence fully satisfies its burden of producing evidence of a legitimate, nondiscriminatory reason for firing Plaintiff.

3.   <u>Pretext</u>

Plaintiff asserts that Defendant's non-discriminatory reason is pretextual because (1) changing his son's girlfriend's ticket was not a violation of the Friends and Family policy because she was not Plaintiff's friend, (2) Plaintiff presented proof to Defendant's representative Malcolm Gearing after the initial November 3, 2009 meeting that he had collected fees from the two

---

[16] Document No. 17, ex. 14.

friends whose tickets he changed, and (3) Plaintiff did accompany his "buddies" on international flights.[17]

The Friends and Family Policy defines "Friend," in relevant part, as "someone with whom the employee has a personal relationship (e.g., a college roommate or neighbor), or someone with whom the employee has a professional relationship (e.g., landscaper, doctor, bank teller), or a co-worker."[18] Plaintiff argues that his son's girlfriend does not fit within that definition, testifying that "I had only met her once." He acknowledged in his sworn testimony that his own son had "some type of military issue, he had to travel for the military," and therefore he changed the girlfriend's ticket without collecting the fee. To waive the fee, he admitted, required approval by a member of management, which Plaintiff did not obtain. Asked directly if that would violate the Family and Friends Policy, Plaintiff replied, "Correct." Plaintiff on this record has raised no issue of fact that Defendant did not genuinely believe Plaintiff had violated the company's Family and Friends Policy, one of the declared reasons for his discharge.

Plaintiff further contends that, in fact, he did charge fees for changing two friends' flights, and stated that he collected the fees with a credit card over the phone. He testified in his

---

[17] Document No. 19 at 17.

[18] Document No. 17, ex. 7 at 12.

deposition that when he was told that company records did not show the fees were collected, he replied, "You know what?  If it's not in the record, then I didn't.  But I came back and I did that.  I collected a fee."  Defendant in its discharge letter to Plaintiff recounted the back and forth that had transpired on whether the fees had been charged, Plaintiff's initial response that he could not remember, his subsequent claim that he had taken payment by a credit card over the telephone, the company's display of documentation that the fees had been waived, and Plaintiff's reply that "We have all sorts of waivers."  Viewed in the light most favorable to Plaintiff that he *did* collect the fees, regardless of anything else he said in the shifting discourse between the parties, there is no evidence that Defendant's belief to the contrary--based on documentation in its records--was a pretextual reason for Defendant to discharge Plaintiff.  *See* Laxton v. Gap Inc., 333 F.3d 572, 579 (5th Cir. 2003) ("Our inquiry is whether [Gap's] perception of [the employee's] performance, accurate or not, was the real reason for her termination. . . .  It is not whether Gap's proffered reason was an incorrect reason for her discharge.") (quotation marks and citations omitted).

Finally, Plaintiff argues that he did accompany his "buddies" on the international portion of flights but failed properly to downgrade them for the domestic segments of the flights.[19]

---

[19] Document No. 19 at 17.

Plaintiff's argument ignores some key admissions made by Plaintiff in his deposition. Thus, after testifying that on one flight, "I did travel with them from Columbia to Houston; and then I forgot to change the pass classification from Houston to Dallas, and that was six of them," he was asked to account for the other twelve violations. Plaintiff did not do so, replying only that he did not see 18 names on the list, but only 17. Plaintiff further testified it was true that in his November 3 meeting with Defendant's representatives that he admitted he had violated "company pass policy by allowing his Buddy Pass riders to travel unaccompanied to and from international destinations and giving passes to people he did not know." Given Plaintiff's confirmations that he had in fact admitted to violations of company policy during the investigation of his misconduct, Plaintiff has raised no fact issue that Defendant was engaged in pretext when it stated that it was discharging Plaintiff for committing those very violations.

Plaintiff also contends, as observed above, that he was denied reasonable accommodations at the November 3 meeting when he requested (1) pen and paper; (2) more time to answer questions; and (3) access to company documents, all to accommodate his poor memory caused by his disability of depression. The summary judgment evidence shows, and Plaintiff concedes, that he was granted the request for pen and paper in the November 3 meeting. Whatever his sense of having been given inadequate time to answer questions in

16

the November 3 meeting, moreover, was fully alleviated by the span of seven additional weeks after November 3 in which he was able to jog his memory at leisure and clarify or expand on his answers during his additional two or three meetings with Defendant's representatives before his discharge.[20] Finally, now having had the opportunity to examine the company's documents during pretrial discovery in this case, Plaintiff still has not pointed to any documents that would have facilitated or changed his answers in the November 3 meeting or that would have led Defendant to absolve Plaintiff of violating the listed company policies. In fact, in his oral deposition given in this case, Plaintiff continued to admit many of the same violations identified in Defendant's termination letter. In sum, Plaintiff has failed to present evidence to raise a genuine issue of material fact that Defendant's declared reasons for discharging him were pretextual, or that Defendant did not genuinely believe--after a multi-week investigation during which Plaintiff admitted numerous violations-- that Plaintiff had in fact violated company policies and that such warranted his discharge.

---

[20] Document No. 19, ex. 1 at 115.

III. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant Continental Airlines, Inc.'s Motion for Summary Judgment (Document No. 17) is GRANTED and Plaintiff Daniel Palacios's claims against Defendant are DISMISSED WITH PREJUDICE.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 11th day of February, 2013.

```
                    _____
                         EWING WERLEIN, JR.
                    UNITED STATES DISTRICT JUDGE
```